EDN REAL ESTATE CORPORATION *et al.*, Plaintiffs and Counterdefendants-Appellants, v. MARQUETTE NATIONAL BANK, as Trustee, *et al.*, Defendants and Counterplaintiffs-Appellees.

First District (6th Division)   No. 1—92—1425

Opinion filed May 13, 1994.

Naomi H. Schuster, of Palos Heights, for appellants.

Witwer, Burlage, Poltrock & Giampietro, of Chicago (Wayne B. Giampietro and James Kykehouse, of counsel), for appellees.

JUSTICE GIANNIS delivered the opinion of the court:

Plaintiff[1] instituted this action for specific performance, declaratory judgment, and damages, claiming that defendants had violated the terms of a lease agreement by refusing to approve the construction of an addition to the building which was the subject of the lease. Defendants denied that they had breached the lease agreement and brought a counterclaim against plaintiff for the balance due under an agreement for the sale of chattels in bulk. The trial court determined that defendants had not breached the lease agreement and that plaintiff was not entitled to any of the relief sought in the complaint. The court also entered judgment in favor of defendants on the counterclaim against plaintiff in the amount of $143,954.40, inclusive of principal and interest, and awarded a setoff to plaintiff in the amount of $13,416. In addition, the court awarded defendants attorney fees in the amount of $59,950 plus $2,269.82 in costs. Plaintiff's request for attorney fees was denied.

On appeal, plaintiff contends that (1) the attorney fees and costs awarded to defendants were excessive, (2) the court erred in denying plaintiff's request for attorney fees, (3) the amount of the judgment interest awarded to defendants was not supported by the manifest weight of the evidence, (4) the trial court erred in dismissing the testimony of plaintiff's expert witness as to the loss of profits incurred by plaintiff, and (5) the amount of interest on the setoff awarded to plaintiff was contrary to the trial court's findings of fact.

The record reflects that defendant Leshner owned and was presi-

---

[1]During trial, Ed Napleton Dodge, Inc., merged with Ed Napleton Imports, Inc., and Ed Napleton Dodge, Inc., was the surviving corporation. After this merger was completed, Ed Napleton Dodge, Inc., was substituted as the sole plaintiff-counterdefendant, and all other plaintiffs-counterdefendants were dismissed from the cause.

dent of Leshner Corporation, which operated an automobile dealership at 4600 Southwest Highway in Oak Lawn, Illinois. Title to the real estate on which the dealership was located was owned by Marquette National Bank, as trustee under land trust No. 11096, in which Leshner was the sole beneficiary.

On May 20, 1985, plaintiff and defendant Leshner entered into an agreement for sale of chattels in bulk, whereby plaintiff agreed to purchase all of the assets of an automobile dealership owned and operated by Leshner. In conjunction with the transfer of his business, Leshner agreed to lease to plaintiff the real property on which the dealership was operated.

On June 12, 1985, the parties signed a lease agreement which included the following term:

"CONSTRUCTION OF NEW IMPROVEMENTS:

The parties acknowledge that the Lessee may be required to construct an addition to the shop facilities of the premises in the near future. Lessor agrees to pay for such improvements in an amount of $100,000.00 to $200,000.00. Thereafter the base rent shall be increased monthly by an amount equal to 1.25% of the cost of such improvements expended by Lessor. In addition, the maximum purchase price, as provided herein, shall be revised and increased from $700,000 to $700,000 plus the actual amount so expended by Lessor. All plans, supervision and building shall be undertaken by Lessee and approved by Lessor. Provided, however, Lessor shall not unreasonably withhold his approval."

The lease also contained the following provision:

"If any action at law or in equity shall be brought to recover any rent under this lease, or for or on account of any breach of, or to enforce or interpret any of the covenants, terms or conditions of this lease, or for the recovery of the possession of the demised premises, the prevailing party shall be entitled to recover from the other party as part of the prevailing party's costs, reasonable attorney's fees, the amount of which shall be fixed by the court and shall be made a part of any judgment or decree rendered."

In addition, the lease required Leshner, as lessor, to maintain the roof during the first 90 days of the initial lease term. The lease agreement was attached as an exhibit to the contract for the sale of the dealership.

Within the first 90 days of the initial lease term, Napleton verbally advised Leshner that the roof was defective and in need of repairs.

After the sale of the dealership closed on June 17, 1985, there remained a balance due for an inventory of spare parts which had not yet been priced. The parties subsequently agreed that plaintiff

owed $105,000 for the parts inventory and that if plaintiff paid the $105,000 balance by December 31, 1985, no interest would be due. If, however, the balance was not paid by December 31, 1985, interest on the amount owed would accrue at a rate of 2% over prime, which was 9.5% during the period from June 18, 1985, to March 17, 1987.

In February 1985, prior to the execution of the lease agreement and of the bulk sales contract, Leshner had obtained from L.B. Erickson Construction, Inc., a written proposal and architectural plans for the construction of 12 additional service bays on the dealership premises. In November 1986, after the transfer of the business and lease of the real property, Napleton contacted L.B. Erickson and negotiated an agreement for the construction of an addition to the dealership premises which consisted primarily of 12 new service bays. These revised plans, which were substantially similar to those obtained by Leshner in February 1985, provided for the construction of the addition at a lower price than that quoted to Leshner in February 1985.

In March 1986, Napleton sent these revised plans to Leshner, who had retired to Florida. Napleton's letter to Leshner, which was dated March 6, 1986, stated, in its entirety, "[p]lease sign the contracts with L.B. Erickson Construction, as they meet with my approval. Volvo is expecting this soon, please expedite immediately." This letter made no reference to the construction plans obtained by Napleton, nor did it request Leshner's approval of any such plans. Although the construction contract had been negotiated by Napleton, it was drafted with Leshner's name as a party and called for Leshner's signature.

In the spring of 1986, Leshner returned to the Chicago area and met with Napleton. During that meeting, Napleton and Leshner discussed the construction of the additional service bays, the repair of the roof, Leshner's retention of certain automobiles pursuant to section 2 of the bulk sales agreement, and the balance due on the bulk sales contract for the spare parts inventory. Napleton indicated that the amount due and owing under the contract was reduced to $89,378.57 because he had incurred certain other expenses which were to be paid by Leshner. At this meeting, Napleton and Leshner agreed that Leshner was to approve the plans for the construction of the additional service bays, repair the roof, and retain certain automobiles until the 1987 models became available in October 1986; Napleton was to pay the sum of $100,000 "net net net interest included by August 31, 1986," in settlement of the balance due for the spare parts inventory.

Napleton's attorney sent a letter dated May 27, 1986, to Lesh-

ner's attorney which stated that Napleton had elected to construct the additional service bays on the leased premises. This letter stated further that Napleton was "formally requesting Mr. Leshner approve the plans and approve the construction contract which will be supplied upon approval of the plans." In his written reply to this letter, counsel for Leshner stated that if Leshner was to construct the improvement, he wanted a lease running to 1995 and a security deposit, along with approval of the plans by Napleton. Napleton refused this proposal and took no action to construct the additional service bays. Plaintiff brought suit on June 20, 1986, seeking that Leshner approve the plans and construction contracts.

Plaintiff's second amended complaint consisted of three counts. Count I requested specific performance of the lease and sought an order requiring defendants to approve the plans and building proposals for the additional service bays, or in the alternative, an order barring defendants from interfering with the execution of the plans and building proposals to be undertaken by plaintiff. Count II sought a declaratory judgment decreeing that plaintiff had the right to proceed with the construction of the addition to the leased premises. Count III sought monetary damages allegedly suffered by plaintiff resulting from the failure of defendants to construct the addition to the premises. The second amended complaint also requested an award of attorney fees pursuant to the terms of the lease agreement.

Defendants brought a counterclaim, asserting, *inter alia*, that plaintiff had failed to pay the balance due under the bulk sales agreement for the spare parts inventory. As part of the judgment sought in the counterclaim, defendants requested damages in the amount of $105,000 for the parts inventory.

In response to the counterclaim, plaintiff asserted that Napleton and Leshner had entered into an agreement which modified certain terms and provisions of the bulk sales agreement. Plaintiff asserted the terms of this subsequent agreement provided that Leshner was to approve the plans for the construction of the additional service facilities; Leshner was to repair the roof of the existing structure; Napleton was to supply a demonstrator car to Leshner; and upon Leshner's approval of the building plans, Napleton was to pay Leshner $100,000, which represented the total amount due Leshner under the bulk sales agreement, including interest. Plaintiff asserted further, that because Leshner had failed to approve the building plans for the addition to the existing structure, Napleton had not become obligated to pay Leshner the sum of $100,000, and that the stated amount would be due Leshner upon his approval of the construction plans and upon the repair of the roof of the existing structure.

In their reply, defendants denied that the obligations of the parties were controlled by the modified agreement.

Defendants thereafter filed an amendment to the counterclaim which asserted that plaintiff had failed to properly exercise the option to renew the lease for an additional five-year term as provided for in the terms of the lease and attached rider. Defendants asserted further that the plaintiff's right to possession of the premises would terminate at the expiration of the initial lease term on June 16, 1990. Plaintiff responded by asserting that it had acted in accordance with the terms of the lease and the attached rider by sending defense counsel notice of their intent to exercise the option to renew the lease. Defendants moved for possession of the premises and for partial summary judgment based upon the assertions contained in the amendment to the counterclaim which alleged that plaintiff had failed to renew the lease for another term. The trial court denied defendants' motions and granted partial summary judgment in favor of plaintiff based upon the court's determination that plaintiff had properly exercised the option to renew under the provisions of the lease.

At the conclusion of the bench trial on the claims raised in the complaint and counterclaim, the court found that defendants had not breached the terms of the lease because they had no obligation to undertake any construction on the leased premises, but only to pay for any construction which plaintiff might undertake. The court found that the lease obligated plaintiff to undertake the construction of any improvements upon the premises which he desired, and Leshner was only obliged to approve the plans and to pay for the improvements. Based upon the determination that defendants had not breached the lease, the trial court dismissed plaintiff's claim for specific performance and found that plaintiff had no basis upon which to recover any alleged damages. The court found further that plaintiff had failed to prove that it had suffered any damages as a result of the defendants' alleged failure to construct the additional service bays.

In ruling on defendants' counterclaim for money owed under the bulk sales transaction, the trial court found that plaintiff owed defendants $100,000 plus interest at the rate of 11.5%. The court awarded plaintiff a setoff in the amount of $13,416 for the cost of the roof repairs which were paid by Napleton in 1988.

Because the court found defendants to be the prevailing parties, the court ordered plaintiff to pay defendants $59,950 in attorney fees and $2,269.82 in costs pursuant to section 17 of the lease.

The trial court entered judgment in favor of defendants and

against plaintiff in the amount of $206,174.22, which consisted of $143,954.40 for the amount owed under the bulk sales agreement, $59,950 in attorney fees, and $2,269.82 in costs. Plaintiff has appealed.

Plaintiff initially contends that the trial court erred in granting defendants $59,950 in attorney fees and $2,269.82 in costs because the award was excessive and was not adequately supported by affidavit or case law.

■ In addressing this claim, we note that the record on appeal does not include a transcript of the hearing on plaintiff's fee petition. The appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error. (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 391-92, 459 N.E.2d 958; *Mars v. Priester* (1990), 205 Ill. App. 3d 1060, 1066, 563 N.E.2d 977.) In the absence of such a record, a court of review must presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant. (*Foutch*, 99 Ill. 2d at 392; *Mars*, 205 Ill. App. 3d at 1066.) Thus, where the record does not include a report of the proceedings, where the judgment order states that the court found the fees to be reasonable, and where there is no indication to the contrary, it must be presumed that the evidence presented to the trial court supported the judgment. (*Mars*, 205 Ill. App. 3d at 1066.) The trial judge is permitted to use his own knowledge and experience to assess the time required to complete particular activities, and a court of review may not reverse an award of attorney fees merely because it may have reached a different conclusion. (*In re Estate of Healy* (1985), 137 Ill. App. 3d 406, 411, 484 N.E.2d 890.) In light of the record before us, we presume that the award of attorney fees was adequately supported by the evidence presented to and considered by the trial court. Accordingly, we will not reverse the amount of the attorney fees awarded by the trial court.

■ Plaintiff next contends that the trial court should have awarded it attorney fees based upon the court's ruling in plaintiff's favor on certain issues. Specifically, plaintiff asserts that it should have received fees because the court determined that it was entitled to a setoff for the cost of the roof repair and because the court entered partial summary judgment in plaintiff's favor on the issue of the lease renewal. We find these contentions to be without merit.

Defendants were ultimately the prevailing parties in the trial court, and, under the terms of the lease, plaintiff was obligated to reimburse defendants for the reasonable attorney fees they incurred. See *Myers v. Popp Enterprises, Inc.* (1991), 216 Ill. App. 3d 830, 838,

576 N.E.2d 452; *Computer Sales Corp. v. Rousonelos Farms, Inc.* (1989), 190 Ill. App. 3d 388, 393, 546 N.E.2d 761.

In the case at bar, the trial court found that defendants had not breached the terms of the lease because they had no obligation to undertake any construction on the leased premises, and the lease obligated plaintiff to undertake the construction of any improvements upon the premises. The court determined that defendants were obligated only to approve the plans and to pay for the improvements. Based upon the determination that defendants had not breached the lease, the trial court dismissed plaintiff's claim for specific performance and found that plaintiff had no basis upon which to recover any alleged damages. Accordingly, the court ruled that plaintiff was not entitled to any of the relief sought in its three-count complaint. The mere fact that the trial court allowed plaintiff a setoff for the cost of the roof repairs is insufficient to characterize plaintiff as the prevailing party. Similarly, we do not believe plaintiff can claim to be the prevailing party simply because the trial court ruled that the lease had not expired.

■ Plaintiff next argues that the trial court erred in ordering it to pay interest at the rate of 11.5% on the $100,000 judgment entered in favor of defendants for the balance due under the bulk sales agreement because this award was contrary to the terms of the parties' second agreement in 1986.

The record indicates that Napleton and Leshner met in the spring of 1986 and entered into an agreement which provided, *inter alia*, that Napleton was to pay the sum of $100,000 "net net net interest included by August 31, 1986," in settlement of the balance due for the spare parts inventory. The terms of this agreement explicitly set forth that no additional interest would be due on the $100,000 if that amount was paid by August 31, 1986. The record reflects, however, that plaintiff did not pay the $100,000 by that date. Counsel acknowledged at oral argument that an award of interest would be appropriate where plaintiff failed to pay the balance due for the spare parts inventory by August 31, 1986. We observe that the prior agreement between the parties clearly contemplated that interest would be due on the balance owed for the spare parts inventory and specified the rate for this interest at 2% over prime. This agreement demonstrates that the specified rate of interest was appropriate and acceptable to both parties. Accordingly, we hold that the trial court acted properly and did not abuse its discretion in ordering that plaintiff pay interest on the judgment at the rate of 11.5%, 2% over the prime rate, as specified in the initial contract between the parties.

■ Plaintiff also contends that the judgment order entered in

favor of defendants was against the manifest weight of the evidence. Specifically, plaintiff claims that there was a discrepancy between the findings of fact and the judgment order entered by the trial court. Plaintiff notes that the findings of fact indicated that plaintiff was entitled to set off the cost of the roof repair in the amount of $13,416 plus interest "at the rate of 11.5%," but the judgment order awarded a setoff of $13,416 plus interest "at the statutory rate."

Plaintiff raised this discrepancy in its motion for reconsideration of the judgment. Although it was brought to the attention of the trial court, this discrepancy was not clarified or resolved through revision of the court's findings of fact or by modification of the judgment order. Because the order entered on the judgment is at variance with the court's findings of fact as to the rate of interest to which plaintiff was entitled, we hold that the award of interest to plaintiff must be vacated, and the cause is remanded for reconciliation of these two conflicting terms.

■ Finally, plaintiff asserts that the court erred in failing to award damages for lost profits because the testimony of plaintiff's expert witness provided evidentiary support for such an award. This argument is wholly without merit where the trial court determined that defendants had not breached the terms of the lease and that plaintiff was not entitled to any of the recovery sought in the second amended complaint.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part, vacated in part, and remanded.

Affirmed in part; vacated in part and remanded.

McNAMARA and DiVITO, JJ., concur.